

# NUMBER 13-11-00332-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHARLOTTE HEARN,                                                                 Appellant,

v.

KATHRYN SNAPKA,                                                                 Appellee.

## On appeal from the 214th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellant, Charlotte Hearn, challenges the trial court's entry of a final summary judgment on her legal malpractice claims against appellee, Kathryn Snapka. In two issues, appellant argues that the trial court: (1) abused its discretion in striking her summary judgment evidence; and (2) erred in granting appellee's motion for summary judgment. We affirm.

## I. BACKGROUND

The following facts are not in dispute. On January 22, 2004, appellant was diagnosed with well-differentiated papillary mesothelioma ("WDPM"). In July 2004, appellant retained appellee to represent her with respect to personal injury claims arising from her WDPM. On January 23, 2006, appellee filed a lawsuit on behalf of appellant against appellant's former employer, Alcoa, alleging claims for negligence, strict liability, and premises liability. Subsequently, the lawsuit was removed to federal district court.

On February 6, 2008, while the suit was still pending in federal court, appellant sued appellee for legal malpractice. In the malpractice suit, appellant alleged that she had hired appellee to represent her in an asbestos lawsuit. She alleged that her claims were subject to a two-year statute of limitations and alleged further that appellee sued only one defendant (her employer) on her behalf. Appellee claimed that appellant negligently failed to sue or otherwise pursue products liability claims against other defendants who manufacture asbestos products to which she was exposed.

Thereafter, Alcoa moved for summary judgment in the underlying suit pending in federal court, asserting that appellant's claims were barred by workers' compensation immunity. On June 30, 2009, appellant's new counsel joined in Alcoa's motion and agreed to the dismissal of appellant's claims. The federal district court entered a take nothing judgment on the claims.

Appellee answered the malpractice lawsuit, and after discovery, appellee designated as responsible third parties the manufacturers of the asbestos products that appellant claimed appellee should have sued on her behalf. On October 13, 2010, the

trial court granted appellee's request to designate responsible third parties. Appellant chose not to join the parties as defendants. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(e), *repealed by* Act of May 30, 2011, 82nd Leg., R.S., ch. 203, § 5.02, 2011 Tex. Sess. Law Serv. ch. 203.

Subsequently, appellee filed a no-evidence motion for summary judgment. Appellee sought summary judgment on the basis that appellant has no evidence of two material elements of her claim: (1) the "suit-within-a-suit" requirement; and (2) the amount of damages that would have been recoverable and collectible had the other suit been properly prosecuted. In addition, appellee sought summary judgment on the basis of estoppel.

Appellant responded with affidavits from three experts and with epidemiological studies showing a causal relationship between asbestos exposure and mesothelioma, but not WDPM specifically.

On March 29, 2011, the trial court held a hearing on appellee's motion for summary judgment. Later that same morning, appellee filed her objections to appellant's summary judgment evidence. On March 29, 2011, appellant filed her response to appellee's objections. On April 18, 2011, the trial court entered an order granting appellee's objections and granting appellee's motion for summary judgment. The trial court did not specify the grounds for its ruling. This appeal ensued.

## II. ANALYSIS

Appellant raises two issues on appeal.

## A. Evidentiary Rulings

In her first issue, appellant argues that the trial court abused its discretion in striking her summary judgment evidence, which consisted of affidavits and reports from three expert witnesses.

## 1. Standard of Review

Rulings concerning the admission or exclusion of summary judgment evidence are reviewed under an abuse of discretion standard. *Barraza v. Eureka Co.*, 25 S.W.3d 225, 228 (Tex. App.—El Paso 2000, pet. denied). The trial court has "broad" discretion to determine the admissibility of expert evidence. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002). A reviewing court cannot conclude that a trial court abused its discretion simply because the reviewing court would have ruled differently. *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex. 1989). We must uphold the trial court's evidentiary ruling if there is any legitimate basis for it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Norstrud v. Trinity Univ. Ins. Co.*, 97 S.W.3d 749, 752 (Tex. App.—Fort Worth 2003, no pet). An appellate court may reverse for abuse of discretion only when, after examining the entire record, it determines the trial court's ruling was arbitrary and unreasonable. *See Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987).

## 2. Applicable Law

Evidentiary rules apply equally in trial and summary judgment proceedings. *Longoria v. United Blood Servs.*, 938 S.W.2d 29, 30 (Tex. 1995). The rules of evidence permit an expert witness to testify regarding "scientific, technical, or other specialized" matters if the expert's testimony would assist the fact finder in understanding the evidence or determining a fact issue. TEX. R. EVID. 702. It is the obligation of the trial

4

court to act as "gatekeeper" to ensure relevance and reliability of expert testimony. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 722-26 (Tex. 1998). Once the party opposing expert testimony objects, the proponent bears the burden to demonstrate admissibility. *E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995).[1]

A two-part test governs whether expert testimony is admissible: (1) the expert must be qualified; and (2) the testimony must be relevant and based on a reliable foundation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001); *see also* TEX. R. EVID. 702. "Rule 702's reliability requirement focuses on the principles, research, and methodology underlying an expert's conclusions." *Exxon*, 88 S.W.3d at 629. In reviewing the reliability of an expert's testimony, the court is not to determine whether the expert's conclusions are correct but "whether the analysis used to reach those conclusions is reliable." *Id.* Expert testimony involving scientific knowledge that is not grounded "'in the methods and procedures of science' is no more than 'subjective belief or unsupported speculation.'" *Robinson*, 923 S.W.2d at 557 (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993)); *see Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (noting that an expert's "bare opinions will not suffice" and the "substance of the testimony must be considered"). "Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. Expert testimony is unreliable if it is based on unreliable data, or if the expert draws conclusions from his underlying data "based

---

[1] *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004) (holding that unreliable expert testimony requires a timely objection; however, conclusory expert testimony does not).

5

on flawed methodology." *Havner*, 953 S.W.2d at 714. The Texas Supreme Court has set out six factors courts may consider in deciding whether expert testimony is reliable:

1. The extent to which the theory has been or can be tested;

2. The extent to which the technique relies on the subjective interpretation of the expert;

3. Whether the theory has been subjected to peer review and/or publication;

4. The technique's potential rate of error;

5. Whether the underlying theory or technique generally has been accepted as valid by the relevant scientific community; and

6. The nonjudicial uses which have been made of the theory or technique.

*Robinson*, 923 S.W.2d at 557.

The *Robinson* factors are nonexclusive and "are not always useful in evaluating expert testimony." *Cooper Tire & Rubber Co.*, 204 S.W.3d at 801–02. In some cases, "experience alone may provide a sufficient basis for an expert's testimony." *Gammill*, 972 S.W.2d at 726. When an expert opinion is based on the experience of the expert alone, the trial court must determine if there is a sufficient connection between the existing data and the opinion offered or if there is "simply too great an analytical gap" for the expert testimony to be considered reliable. *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). An impermissible analytical gap exists if an expert "has offered nothing to suggest that what he believes could have happened actually did happen" because then "[h]is opinions are little more than subjective belief or unsupported speculation." *Id.* at 727–28.

**B. Discussion**

6

**1. Iola Affidavit**

Appellant argues that the trial court erred in striking the affidavit of Mark Iola, an attorney who specializes in asbestos litigation. In his affidavit, Iola states, among other things, that appellee breached the standard of care in the course of representing appellant in the underlying personal injury suit. According to Iola:

> [It is] more likely than not, but for the negligence of [appellee] . . . , appellant would have recovered settlements from multiple tort defendants and asbestos bankruptcy trusts, totaling at least $2,000,000. Moreover, at least with respect to claims against tort defendants, such settlements should have been finalized by no later than the end of 2005.

Appellee made the following objections to the Iola affidavit: (1) Iola applies the wrong standard of care (i.e., the standard for an asbestos specialist) instead of the proper standard (i.e., the standard for a reasonably prudent attorney); (2) Iola fails to "state if, how or why he knows the proper standard of care"; (3) Iola's opinion that appellee had "little or no experience" litigating asbestos cases is based on speculation; (4) Iola's opinion that appellee should have filed suit against a non-diverse defendant to avoid the MDL panel is improper because it is based on the erroneous premise that a lawyer should "game the system to beat the MDL panel" instead of filing "meritorious claims in the proper courts against proper defendants"; (5) Iola's opinions on causation are speculative because Iola states that the products manufacturers would have settled claims with appellant when there is no evidence that such claims had settlement value; (6) Iola's opinion on causation is based on a misapplication of Texas law, namely that appellant's case had value before *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765 (Tex. 2007), but not after; (7) Iola uses the wrong measure of damages (i.e., the settlement value of a case) instead of the correct measure (i.e., the amount recoverable under

7

Texas law); (8) Iola's opinions on damages are unreliable because he merely provides a figure representing the gross amount of recovery and then fails to compute the complete damage model by deducting expenses, attorney's fees, and other reductions; (9) Iola's opinions on causation and damages are speculative because they are based on conditions (i.e., mesothelioma) that are different from appellant's (i.e., WDPM); (10) Iola's opinions on causation and damages are unreliable because there is no evidence to establish that WDPM is caused by asbestos within the required degree of probability required under *Havner*, 953 S.W.2d at 712–14; (11) Iola's opinions on causation and damages are speculative and unreliable because they are not based on underlying data that can be objectively measured and evaluated; and (12) Iola's opinions on causation and damages are speculative and unreliable because he is not applying the proper methodology to evaluate this case.

In her response, appellant argued five points:   (1) Iola's affidavit applies the proper standard of care; (2) Iola's opinions on causation are not speculative; (3) Iola used the proper measure of damages for a legal malpractice case; (4) Iola's failure to deduct costs from gross recovery does not render his opinion inadmissible; and (5) appellee has waived any argument that Iola's affidavit is unreliable under the standard set out in *Robinson*, 923 S.W.2d at 549.

The trial court found that appellant failed to establish the admissibility of Iola's testimony.  Without stating the specific grounds for its ruling, the court struck Iola's affidavit from the summary judgment record.  According to appellant, the trial court's ruling was an abuse of discretion.  Appellant complains that the trial court failed to

8

conduct any type of *Robinson* hearing. Appellant also argues that Iola's testimony is not speculative and that Iola applies the correct standard of care.

Although appellant complains that the trial court failed to conduct a *Robinson* hearing, there is nothing in the record to indicate that appellant requested a hearing. *See* Tex. R. App. P. 33.1(a)(1)(A) (party must make timely request, objection, or motion, stating specific grounds for ruling it desired court to make, and obtain ruling to preserve complaint for appellate review). Instead, as noted above, appellant argued that appellee waived any objections under *Robinson* by failing to request a hearing. This assertion is incorrect.

As the party opposing the evidence, appellee had the burden to object to the evidence. *See Robinson*, 923 S.W.2d at 557. After appellee objected, the burden shifted to appellant to demonstrate the admissibility of the evidence. *See id.* Appellee was not required to request a hearing on her objections in order for the burden to shift to appellant to demonstrate admissibility. *See id.* Nor did appellee waive her objections by failing to request a hearing.[2] On the contrary, it was appellant's burden to request a hearing and to present evidence in support of the admissibility of the proposed expert testimony. *See Mack Trucks v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006) ("Because the party sponsoring the expert bears the burden of showing that the expert's testimony is admissible, the burden of presenting understandable evidence that will persuade the trial court is on the presenting party.").

---

[2] *See Weiss v. Mechanical Associated Servs., Inc.*, 989 S.W.2d 120, 124 n.6 (Tex. App.—San Antonio, pet. denied) ("Weiss contends the defendants did not preserve their *Robinson* argument for review because they failed to request a *Robinson* hearing and secure a formal *Robinson* ruling from the trial court. Weiss's contentions are without merit because she carried the burden to bring forward competent evidence. Furthermore, she was notified of the defendants' intent to challenge the scientific reliability of her evidence when she was served with their motions for summary judgment. Finally, the trial court's order is, in effect, a ruling on the defendants' *Robinson* challenge.").

On appeal, it is appellant's burden to negate all legitimate grounds for the trial court's ruling. *See Owens-Corning,* 972 S.W.2d at 43; *The State Bar v. Evans*, 774 S.W.2d 656, 659 (Tex. 1989) ("Further, even where the trial court errs in sustaining a specific untenable objection, an appellate court should uphold the ruling if there is any other ground for doing so, even though not urged below."). As noted above, appellee made twelve different objections to the evidence. At least four of the objections called into question the reliability of Iola's opinions and methodology, thus shifting the burden to appellant on the issue of admissibility. *See Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002) ("Once the Authority made its objection, the burden was on Kraft to establish that Gholson's opinion was reliable."). Accordingly, as the proponent of the evidence, appellant was required to prove the reliability of each opinion by a preponderance of the evidence. *See Wilson v. Shanti*, 333 S.W.3d 909, 914 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("The proponent bears this burden regardless of the quality or quantity of the opposing party's evidence on the issue and regardless of whether the opposing party attempts to conclusively prove the expert testimony is wrong."). Part of the burden of proof is ensuring that the expert's testimony contains no internal inconsistencies. *Id.*

Instead of attempting to meet this burden directly, appellant relied on a waiver argument, which should be rejected for the aforementioned reasons. Accordingly, because appellant failed to affirmatively establish the reliability of each opinion in the Iola affidavit, the trial court had discretion to strike the affidavit from evidence. *See id.* Although this conclusion compels the Court to affirm the trial court's ruling, it should be noted that the speculative nature of Iola's testimony provides additional support for the

10

ruling. *See Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002) ("Rule 702's reliability requirement focuses on the principles, research, and methodology underlying an expert's conclusions. Under this requirement, expert testimony is unreliable if it is not grounded in the methods and procedures of science and is no more than subjective belief or unsupported speculation.") (internal citations, quotations omitted).

Appellant contends that the opinions offered by Iola are not speculative because they are based on his extensive experience in negotiating settlements on behalf of asbestos personal injury claimants. Although appellant concedes that in "most types of litigation . . . projecting the possibility of settlement is indeed speculative," appellant maintains that it is not speculative in asbestos litigation because, among other things, the law is well settled. In his affidavit, however, Iola states that during the relevant time period, there was a major change in standards of proof applicable in this area of the law, which rendered appellant's multi-million-dollar claims worthless:

> This breach [of the standard of care] is particularly significant in this case because of the change in Texas law that came about with the Texas Supreme Court's decision in *Borg Warner* in 2007. Despite the fact that Ms. Hearn's claims against the various asbestos product manufacturers described above carried substantial settlement value in 2004 and 2005, today those same claims are essentially worthless. Because of the overwhelming difficulties associated with meeting the *Borg-Warner* exposure standard in the context of a peritoneal, papillary mesothelioma claim like [appellant's], few, if any, asbestos attorneys would file such a lawsuit in Texas today. Such claims would be unlikely to survive summary judgment. As a result, they have no settlement value.

In light of Iola's opinion that a major change in this area of the law eliminated all settlement value of appellant's claims, the trial court could have reasonably concluded that appellant's claims were like those in "most types of litigation," where as appellant

11

has conceded, "projecting the possibility of settlement is indeed speculative." Accordingly, the trial court did not abuse its discretion in striking the Iola affidavit.

### 2. Bedrossian Affidavit

Appellant also argues that the trial court erred in striking the affidavit of Carlos Bedrossian, M.D., Ph.D., a board-certified pathologist. In his affidavit, Bedrossian offers opinions concerning appellant's exposure to asbestos and the causal connection to her WDPM. Among other things, Bedrossian states that in his "opinion to a reasonable degree of medical certainty, there is no threshold level of exposure below which asbestos will not cause mesothelioma, including papillary mesothelioma such as that suffered by [appellant]." Attached to Bedrossian's affidavit is an expert report in which he details the various instances in which appellant was exposed to asbestos. According to Bedrossian, the weight of the scientific evidence "demonstrates that, when, as in [appellant's] case, a patient with WDPM reports occupational asbestos exposure, to a reasonable degree of medical certainty, such exposure was a substantial factor in causing that patient's cancer." Finally, Bedrossian concludes that, "to a reasonable degree of medical certainty, . . . each and every occupational and para-occupational exposure to asbestos, from any and all products, containing any and all fiber types that [appellant] sustained prior to her diagnosis with mesothelioma was a significant contributing factor to the development of her mesothelioma."

Appellee objected to Bedrossian's affidavit and expert report on the following grounds: (1) Bedrossian's opinion that there is no threshold level of exposure below which asbestos will not cause mesothelioma is improper because it conflicts with the legal standard articulated in *Borg-Warner*; (2) Bedrossian states that appellant "suffered

12

significant asbestos exposure" by contact with her husband, but fails to define what level of exposure is "significant"; (3) Bedrossian improperly infers appellant's exposure to asbestos based on her disease, not the disease from the exposure; (4) Bedrossian's opinion that appellant's exposure to asbestos was a cause in fact of her WDPM is unreliable speculation and surmise because it is not based on a proper methodology and fails to comply with the proper standard of causation; (5) Bedrossian's opinion that there is no difference between WPDM and mesothelioma generally is not based on accepted scientific evidence or methods; and (6) Bedrossian's report is not sworn and is therefore hearsay.

In response, appellant argued, among other things, that Bedrossian's opinions did not conflict with Texas law because the standard articulated by the Texas Supreme Court in *Borg-Warner* did not apply in the 2004–06 time period in question. Furthermore, according to appellant, even if the *Borg-Warner* standard were applicable, Bedrossian met that standard by stating that appellant's level of exposure was above the minimum level necessary to cause mesothelioma. We disagree.

Bedrossian's testimony conflicts with the legal standards applicable to this case. For instance, Bedrossian states that there is no threshold level of exposure below which asbestos will not cause mesothelioma. Yet, the Texas Supreme Court has held that "[e]xposure to asbestos, a known carcinogen, is never healthy but fortunately does not always result in disease." *See Temple-Inland Forest Prods. Corp. v. Carter*, 993 S.W.2d 88, 95 (Tex. 1999). Thus, the foundation of Bedrossian's opinions conflicts with the Texas Supreme Court's holding that there can be some safe exposure to asbestos. *See id.*

13

Furthermore, even before *Borg-Warner*, the Texas Supreme Court held that causation requires proof that a "defendant's conduct or product be a substantial factor in bringing about the plaintiff's injuries." *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995). Although Bedrossian states that exposure to asbestos was necessarily a significant contributing factor to the development of appellant's WDPM, he does not connect appellant's WDPM to any specific defendant or any specific asbestos-containing product. Instead, he states, "I believe that she contracted mesothelioma as a result of her total and cumulative exposure to asbestos in the workplace and as a household contact of her husband when laundering his garments contaminated with asbestos fibers." Again, this opinion does not connect appellant's WDPM to the conduct or product of any specific defendant and is therefore no evidence of causation. *See id.*

Finally, Bedrossian's testimony lacks any "Defendant-specific evidence relating to the approximate dose to which the plaintiff was exposed." *See Borg-Warner Corporation*, 232 S.W.3d at 773.[3] Bedrossian's testimony is merely anecdotal evidence of "some exposure" to asbestos, and it is insufficient to prove causation of asbestos-related disease. *See id.* at 765.

Accordingly, the trial court did not abuse its discretion by striking Bedrossian's affidavit.

### 3. Siegel Affidavit

Appellant also argues that the trial court erred in striking the affidavit of Charles S. Siegel, an attorney whose primary area of practice is representing plaintiffs in

---

[3] Appellant argues that the *Borg-Warner* decision does not apply in this case, but we reject that argument for the reasons stated below in connection with the discussion of the affidavit of Charles S. Siegel. *See Borg-Warner Corp. v. Flores*, 232 S.W.3d 765 (Tex. 2007).

14

asbestos-related, personal-injury cases. In his affidavit, Siegel provides opinions regarding whether, under Texas law as it was applied prior to the Texas Supreme Court's 2007 decision in *Borg-Warner*, the underlying asbestos claims would have likely survived summary judgment. *See id.* at 765. Ultimately, Siegel concludes that, based on his experience, before June 2007, appellant's testimony regarding her exposure to various asbestos-containing joint compound and other building products would be more than sufficient to overcome a motion for summary judgment in a Texas court. According to Siegel, at that time, no Texas court would have required appellant to provide any quantified estimate of her exposures to asbestos from any of these products.

Appellee objected on the grounds that the Siegel affidavit: (1) contains legal conclusions which are exclusively the province of the court, not a witness; (2) is speculative; (3) is incorrect because a motion for summary judgment filed by an asbestos defendant in 2004–05 based on the authorities cited in the *Borg-Warner* decision should have been granted by a Texas court; and (4) incorrectly opined that *Borg-Warner* changed existing law.

As a preliminary matter, it should be noted that an expert witness may not testify regarding an opinion on a pure question of law. *See Upjohn Co. v. Rylander*, 38 S.W.3d 600, 611 (Tex. App.—Austin 2000, pet. denied); *Holden v. Weidenfeller*, 929 S.W.2d 124, 133 (Tex. App.—San Antonio 1996, writ denied); *Schauer v. Mem'l Care Sys.*, 856 S.W.2d 437, 451 (Tex. App.—Houston [1st Dist.] 1993, no writ). Nevertheless, an expert may offer an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and based on proper legal concepts. *See Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex. 1987).

15

In this instance, the opinions in the Siegel affidavit are based on the assumption that the standard used by the Texas Supreme Court in *Borg-Warner* would not have applied to appellant's underlying claims because the decision was not handed down until 2007 and appellant's claims were litigated during the time period of 2004–05, while the *Borg-Warner* case was still on appeal. This is problematic for at least two reasons.

First, the issue of surviving a motion for summary judgment is purely hypothetical because there is no actual motion for Siegel to evaluate objectively. Thus, it is necessary for him to speculate about what arguments might have been made in the motion and which authorities might have been cited in support thereof. As appellee pointed out in her objections, Siegel assumes that an asbestos defendant in 2004–05 would not have made the same arguments or cited the same authorities as the asbestos defendant in *Borg-Warner*; however, there is no reason to believe that is true. It is pure speculation.

Second, and equally as important, Siegel assumes that the standard applied in *Borg-Warner* would not apply to appellant's claims because her claims arose before the decision was handed down in 2007. We disagree. In *Borg-Warner*, a jury trial was held in 2002, resulting in a verdict and money judgment in favor of the asbestos plaintiff. *See Borg-Warner*, 232 S.W.3d at 765–69. In 2007, the Texas Supreme Court reversed the judgment, holding that there was insufficient evidence to prove causation under existing standards. *Id.* at 772–73. It is unreasonable to assume that in 2004–05 appellant would not have been required to meet the same standards that the plaintiff in *Borg-Warner* was expected to meet in 2002. Accordingly, the trial court did not abuse its discretion in excluding the Siegel affidavit.

16

Appellant's first issue is overruled.

## B. Summary Judgment

In her second issue, appellant argues that the trial court erred in granting summary judgment in favor of appellee.

### 1. Standard of Review

We review summary judgments de novo. *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2002, no pet.). In a traditional motion for summary judgment, the movant has the burden of showing both that there is no genuine issue of material fact and entitlement to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.). In deciding whether there is a genuine issue of material fact, evidence favorable to the nonmovant is taken as true, and all reasonable inferences are made, and all doubts are resolved, in favor of the nonmovant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Summary judgment is proper if the movant disproves at least one element of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. *Id.* The nonmovant has no burden to respond to a traditional summary judgment motion unless the movant conclusively establishes its cause of action or defense. *Swilley*, 488 S.W.2d at 68.

A no-evidence summary judgment is equivalent to a pretrial directed verdict, and this Court applies the same legal sufficiency standard on review. *Zapata v. Children's Clinic*, 997 S.W.2d 745, 747 (Tex. App.—Corpus Christi 1999, pet. denied). In an appeal of a no-evidence summary judgment, this Court reviews the evidence in the light

most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Merrell Dow,* 953 S.W.2d at 711; *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). If the nonmovant produces evidence to raise a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i). All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact. *Zapata*, 997 S.W.2d at 747. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" *Id.* (citing *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied) (quoting *Kindred v. Con/Chem Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). Conversely, more than a scintilla exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion. TEX. R. CIV. P. 166a(i).

In the present case, the trial court did not specify the grounds on which the summary judgment was granted. If a summary judgment order issued by the trial court does not specify the ground or grounds relied upon for a ruling, the ruling will be upheld if any of the grounds in the summary judgment motion can be sustained. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex. 1999); *Weakly v. East*, 900 S.W.2d 755, 758 (Tex. App.—Corpus Christi 1995, writ denied).

## 2. Applicable Law

Legal malpractice claims sound in tort. *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 783 (Tex. 2006); *Cosgrove v. Grimes*, 774 S.W.2d 662, 664

18

(Tex. 1989).  The plaintiff must demonstrate that "(1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred."  *Belt*, 192 S.W.3d at 783; *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995).  If a legal malpractice case arises from prior litigation, the plaintiff must prove that, "but for" the attorney's breach of his duty, the plaintiff would have prevailed in the underlying case.  *Rangel v. Lapin*, 177 S.W.3d 17, 22 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  This "but for" causation aspect of the plaintiff's burden is known as the "suit-within-a-suit" requirement.  *Id.*  In addition, "[t]he plaintiff must prove and obtain findings as to the amount of damages that would have been recoverable and collectible if the other case had been properly prosecuted."  *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009).

### 3. Discussion

Appellee moved for summary judgment on the basis that appellant has no evidence of two material elements of her claim:  (1) the "suit-within-a-suit" requirement; and (2) the amount of damages that would have been recoverable and collectible had the other suit been properly prosecuted.  In addition, appellee sought summary judgment on the basis of estoppel.

As noted above, the trial court granted the motion for summary judgment without stating the basis for its ruling.  Thus, appellant must negate all bases for the trial court's ruling.  See *Bradley*, 990 S.W.2d at 247; *Weakly*, 900 S.W.2d at 758.

Appellee contends that the summary judgment must be affirmed because appellant has failed to address or negate equitable estoppel as a basis for the summary

19

judgment. Equitable estoppel is an affirmative defense for which appellee would have the burden of proof. *Nash v. Beckett*, 365 S.W.3d 131, 143 (Tex. 2012). A movant cannot file a no-evidence motion for summary judgment on an affirmative defense that it has the burden to prove at trial. *Killam Ranch Props. v. Webb County*, 376 S.W.3d 147, 157 (Tex. App.—San Antonio 2012, pet. filed).

In this case, appellee attached evidence to her motion for summary judgment and used that evidence in support of her request for summary judgment on the basis of estoppel. Thus, the motion—though captioned a no-evidence motion for summary judgment—was actually a hybrid-motion containing both no-evidence and traditional grounds for summary judgment. *See Quanaim v. Frasco Restaurant*, 17 S.W.3d 30, 41 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("Frasco, Inc.'s second motion for summary judgment, although purporting to be filed under the 'no evidence' provisions of Rule 166a(i), was based on affirmative defenses and, therefore, was actually a traditional motion for summary judgment."). Accordingly, we will treat the motion as a hybrid motion for summary judgment. *See Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. ) ("Texas Rule of Civil Procedure 166a does not prohibit a party from combining in a single motion a request for summary judgment that utilizes the procedures under either subsection (a) or (b), with a request for summary judgment that utilizes subsection (i) and asserts that there is no evidence of one or more essential elements of a claim or defense.") (internal citations, quotations omitted).

In general, when a party files a hybrid summary-judgment motion on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *Salazar v. Ramos*, 361 S.W.3d 739, 745 (Tex. App.—El

Paso 2012, pet. denied). In this case, however, appellant has failed to challenge the traditional grounds. Thus, the summary judgment must be affirmed on that basis alone. *See State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993) ("[W]hen there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was granted, the appealing party must negate all grounds on appeal.").

Moreover, even if the Court were to address the no-evidence grounds for summary judgment, the trial court did not err in striking the evidence offered by appellant. *See Havner*, 953 S.W.2d at 720; *see also In re Allied Chem. Corp.*, 227 S.W.3d 652, 656 (Tex. 2007) (orig. proceeding); *Merck & Co., Inc. v. Ernst*, 296 S.W.3d 81, 96 (Tex. App.—Houston [14th Dist.] 2009, pet. filed). Thus, appellant failed to raise a fact issue on (1) the "suit-within-a-suit" requirement; and (2) the amount of damages that would have been recoverable and collectible had the other suit been properly prosecuted. Thus, summary judgment was appropriate on that basis as well.

Accordingly, appellant's second issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROGELIO VALDEZ
Chief Justice

Dissenting Memorandum Opinion
By Justice Rose Vela.

Delivered and filed the
28th day of December, 2012.