# IN THE SUPREME COURT OF TEXAS

═════════════
No. 12-0617
═════════════


UNION CARBIDE CORPORATION, PETITIONER,

v.

DAISY E. SYNATZSKE AND GRACE ANNETTE WEBB, INDIVIDUALLY
AND AS REPRESENTATIVES AND CO-EXECUTRIXES OF THE ESTATE OF
JOSEPH EMMITE, SR., JOSEPH EMMITE, JR., DOROTHY A. DAY,
VERA J. GIALMALVA AND JAMES R. EMMITE, RESPONDENTS

═══════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════════


JUSTICE LEHRMANN, dissenting.

I join JUSTICE BOYD in concluding that Chapter 90's safety valve provision does not require a plaintiff to produce a pulmonary function test showing impairment. However, because the Court arrives at the opposite holding, I write separately to consider whether the application of Chapter 90 as construed and applied here violates the Texas Constitution's prohibition on retroactive laws. TEX. CONST. art. I, § 16.

"A retroactive statute is one which gives to preenactment conduct a different legal effect from that which it would have had without the passage of the statute." Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 HARV. L. REV. 692, 692 (1960). In

this case, the Court holds that Chapter 90 bars the claim of a plaintiff who failed to adhere to its requirements. Because the statute imposes a penalty for preenactment conduct, which the evidence shows the plaintiff was incapable of avoiding, I ultimately conclude that the statute fails the three-factor test we set forth in *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126 (Tex. 2010). For that reason, I respectfully dissent.

## I. Background

On May 19, 2005, the governor signed into law Chapter 90 of the Texas Civil Practice and Remedies Code. Act of May 17, 2005, 79th Leg., R.S., ch. 97, § 2, 2005 Tex. Gen. Laws 169, 171–82 (codified at TEX. CIV. PRAC. & REM. CODE §§ 90.001–.012). In broad terms, Chapter 90 requires a claimant asserting an asbestos-related injury to serve on the defendant a physician's report meeting certain requirements. *Id*. §§ 90.003, .006. Among many other prerequisites, the report must verify that the exposed person experienced a certain level of asbestos-related pulmonary impairment. *Id.* § 90.003(a)(2)(D). The impairment must be shown by a particular method, pulmonary function testing. *Id.* However, in "exceptional and limited circumstances," Chapter 90 allows a claimant to demonstrate asbestos-related impairment when he cannot satisfy all of section 90.003's requirements. *Id.* § 90.010(f)(1), (j). Even in this instance, though, the statute does not relieve the claimant of his obligation to demonstrate that the exposed person underwent pulmonary function testing. *Id*. § 90.010(f)(1)(B). On September 1, 2005, three-and-a-half months after Chapter 90 was signed into law, it became effective.

For decades, Joseph Emmite worked as an insulator at Union Carbide. By the time he was eighty-five, he suffered from a number of maladies, including osteoarthritis and dementia. When

Joseph was hospitalized in May 2005, Dr. Joseph Prince conducted a physical examination, during which he discovered that Joseph had "diminished breath sounds at the right lung base." A chest CT revealed "extensive pleural and diaphragmatic calcifications, right pleural effusion with compressive subsegmental atelectasis, and bilateral interstitial fibrotic pattern." After further testing, Dr. Prince diagnosed Joseph with pulmonary asbestosis. Dr. Prince later stated that, due to Joseph's failing health and inability to support his own weight, pulmonary function testing would have been "difficult or even prohibitive" at the time of the diagnosis. Joseph died on June 15, 2005, one month after Chapter 90 was signed into law, and two-and-a-half months before the statute became effective.

Joseph's family brought suit two years later, on June 7, 2007. Union Carbide filed a motion to dismiss based primarily on Joseph's lack of pulmonary function testing. After multiple hearings, the MDL pretrial court made numerous findings of fact, including that "[s]hortly before his death [Joseph] suffered from physical and mental limitations, which made it impossible for him to take a pulmonary function test," and that "[h]ad Joseph Emmite been physically and mentally capable of performing a pulmonary function test, the results would have demonstrated pulmonary impairment greater than required under [section] 90.003." As a result, the MDL judge denied Union Carbide's motion to dismiss, and Union Carbide filed an interlocutory appeal. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(11). The court of appeals, sitting *en banc*, held that Chapter 90 was unconstitutionally retroactive as applied to the Emmites. 386 S.W.3d 278, 302. I agree with the court of appeals and would hold that Chapter 90 is unconstitutional as applied.

3

## II. Retroactivity

"[T]he 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)). This "has long been a solid foundation of American law." *Kaiser Aluminum & Chem. Corp.*, 494 U.S. at 855 (Scalia, J., concurring). Indeed, the Texas Constitution states plainly that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16. However, "[w]hile statutory retroactivity has long been disfavored, deciding when a statute operates 'retroactively' is not always a simple or mechanical task." *Landgraf*, 511 U.S. at 268. Rather, the question is a complex one, and "the constitutional prohibition against retroactive laws does not insulate every vested right from impairment, nor does it give way to every reasonable exercise of the Legislature's police power." *Robinson*, 335 S.W.3d at 145. To provide guidance in determining when a statute is unconstitutionally retroactive, we developed a three-factor test in *Robinson*, under which we consider "the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; the nature of the prior right impaired by the statute; and the extent of the impairment." *Id.* I take each of these factors in turn.

### A. The Public Interest

"The perceived public advantage of a retroactive law is not simply to be balanced against its relatively small impact on private interests, or the prohibition would be deprived of most of its force." *Id.* at 145–46. Instead, "[t]here must be a compelling public interest to overcome the heavy

4

presumption against retroactive laws." *Id.* at 146. In contrast to the law at issue in *Robinson*, Chapter 90 was enacted for a legitimate public purpose. The Legislature has stated that it designed Chapter 90 to protect the right of people with asbestos-related diseases "to pursue their claims for compensation in a fair and efficient manner through the Texas court system, while at the same time preventing scarce judicial and litigant resources from being misdirected by the claims of individuals who have been exposed . . . but have no functional or physical impairment." Act of May 17, 2005, 79th Leg., R.S., ch. 97, § 1(n), 2005 Tex. Gen. Laws 169, 170. The Court correctly notes that this public interest is an important one. However, that characterization does not end our inquiry.

The Court fails to acknowledge that the Legislature's aim is entirely thwarted by the retroactive application of Chapter 90 to the Emmites' case. This is not an instance in which a plaintiff who had "no functional or physical impairment" sought to misdirect valuable judicial resources. *Id.* Instead, this case presents the opposite scenario. Dr. Prince concluded that "the clinical history and other diagnostic testing, coupled with meticulous postmortem analysis of pulmonary tissue" demonstrated that Joseph suffered from "significant, advanced pulmonary asbestosis." The pretrial MDL court agreed, finding that "[h]ad Joseph Emmite been physically and mentally capable of performing a pulmonary function test, the results would have demonstrated pulmonary impairment greater than required under Texas Civil Practice and Remedies Code § 90.003." In light of the evidence the Emmites adduced, I fail to see how applying Chapter 90 to their claims serves the public interest the Legislature sought to vindicate.

The Court maintains that, through Chapter 90, the Legislature adopted "an objective method" to distinguish between those whose asbestos exposure resulted in functional impairment and those

5

whose exposure did not so result. *Ante* at ___. But the Court forgets that the pulmonary function testing the statute mandates is not an end in itself. Again, the stated purpose of Chapter 90 is to ensure that individuals with "no functional or physical impairment" do not misdirect scant judicial resources. The Emmites demonstrated by credible evidence that Joseph was not one of those individuals.

We do not consider retroactivity in a vacuum. Instead, we consider the application of a particular law to the facts of a particular case, and then determine whether the law, as applied, is unconstitutional. *See Robinson*, 335 S.W.3d at 147. We ought to assess public interest with this in mind. On the facts presented here, because Joseph does not fall into the category of persons whom the Legislature intended to prevent from bringing suit, the public interest the statute was intended to further is not at all served by the application of Chapter 90 to the Emmites' claims.

### B. The Nature of the Right

In *Robinson*, we also considered the nature of the plaintiff's right to recover that the challenged law impedes or extinguishes. 335 S.W.3d at 148. We reasoned that "claims like the Robinsons' [involving injury from asbestos exposure] have become a mature tort, and recovery is more predictable, especially when the injury is mesothelioma, a uniquely asbestos-related disease." *Id.* We also observed that "the Robinsons' claims had a substantial basis in fact." *Id.* The same conclusions can be drawn here. Like the Robinsons' claims, the Emmites' claims have become a mature tort. *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 765 (Tex. 2007) ("Nearly ten years ago, we observed that asbestos litigation had reached maturity."). Like mesothelioma, asbestosis is a uniquely asbestos-related disease, for which recovery is generally predictable. *See id.* at 766. And,

6

finally, like the Robinsons' claims, the Emmites' claims have a substantial basis in fact, reflected in the favorable factual findings made by the MDL pretrial court. There can be little doubt, then, that the Emmites' right to recover is a substantial one, and should not be easily disturbed.

## C. The Extent of the Impairment

But the principal question in this case is not whether the right is a substantial one, but rather whether the application of Chapter 90 impairs the Emmites' ability to exercise that right to an unconstitutional degree. In today's opinion, the Court holds that the Emmites' rights were not so impaired as to offend the Texas Constitution for two reasons. First, the Court argues that because Chapter 90 was signed into law before Joseph died, the case at bar is distinguishable from *Robinson*, in which the applicable statute was signed into law *after* the Robinsons' cause of action accrued. 335 S.W.3d at 129–30. But this argument dissolves the distinction between the date upon which a statute is signed into law and the date upon which a statute becomes effective. Contrary to the Court's assertion, at the time Joseph died and the Emmites' cause of action accrued, Texas law did not require a plaintiff to produce pulmonary function testing–this change occurred *after* the Emmites' cause of action accrued, just as it did in *Robinson*. Nor is it of any moment that the Emmites had notice that the law would change, as Joseph would have been unable to engage in pulmonary function testing in any event; the statute was signed into law one month before his death, and the MDL pretrial judge stated in his findings of fact that "[s]hortly before his death [Joseph] suffered from physical and mental limitations, which made it impossible for him to take a pulmonary function test." The case at bar cannot be distinguished from *Robinson*, then, on the basis that Chapter 90 was signed into law before Joseph died.

7

Second, the Court notes that, because the Emmites had an opportunity to bring their claims before Chapter 90 went into effect, their claims were not completely extinguished. While I agree that the Emmites had a brief window during which they could have filed suit without the need for a pulmonary function test, I do not agree that two-and-a-half months is a sufficient period of time to tip the constitutional balance. Ordinarily, the statute of limitations for a wrongful death action is two years. TEX. CIV. PRAC. & REM. CODE § 16.003(b). However, the enactment of Chapter 90 had the effect of shortening that statute of limitations to two-and-a-half months in the Emmites' case. One purpose of the prohibition on retroactive laws is to ensure that the settled expectations of litigants are not upset. *Landgraf*, 511 U.S. at 265–66. In my view, it is not reasonable to expect the Emmites, particularly when they were mourning the loss of a family member, to have known that they would be required to investigate and file a lawsuit in only two-and-a-half months' time. In this instance, I cannot conclude that "the heavy presumption against retroactive laws" has been overcome. *Robinson*, 335 S.W.3d at 126.

Finally, I feel compelled to call the Legislature's attention to a problem this case presents: though the stated purpose of Chapter 90 is to allow people with asbestos-related injuries "to pursue their claims for compensation in a fair and efficient manner through the Texas court system," the mechanism the Legislature has chosen to effect that goal, pulmonary function testing, seems overly broad. The testimony in today's case indicates that pulmonary function testing may be impossible for plaintiffs who are very ill. A plaintiff should not be prevented from recovering for an injury caused by exposure to asbestos because that exposure has made him too sick to complete a pulmonary function test. I respectfully urge the Legislature to reconsider the wisdom of requiring

8

pulmonary function testing even in Chapter 90's "safety valve" provision, at least in those cases in which a doctor has concluded that such testing would be prohibitive. TEX. CIV. PRAC. & REM. CODE § 90.010(f)(1), (j).

### III. Conclusion

In the case at bar, I conclude that the Emmites' wrongful death claims were substantial and had accrued before Texas law required asbestos plaintiffs to produce a pulmonary function test. The Emmites' claims were also significantly impaired because they had only two-and-a-half months' time during which they could have brought those claims before the statute came into effect. Finally, the public interest furthered by the statute would not be served by its application to Joseph's case. Accordingly, I would hold that the application of Chapter 90 to the Emmites' claims is unconstitutionally retroactive. TEX. CONST. art. I, § 16. I would affirm the judgment of the court of appeals.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** July 3, 2014

9