# Supreme Court of Texas

No. 24-0411

Howmet Aerospace, Inc., f/k/a Arconic, Inc., f/k/a Alcoa, Inc.,

*Petitioner*,

v.

Frank Burford, Individually and as Representative of the Heirs and Estate of Carolyn Burford, Deceased; Wesley Burford, Individually; and Leslie Schell, Individually,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

JUSTICE YOUNG, with whom Justice Sullivan and Justice Hawkins join, concurring in the denial of the petition for review.

In *Bostic v. Georgia–Pacific Corp.*, this Court stated that "proof of dose would be required" to establish substantial-factor causation in a single-source-exposure asbestos case. 439 S.W.3d 332, 352 (Tex. 2014). The court of appeals below declined to follow this statement, discarding it as "nonbinding obiter dicta." It instead concluded that because the plaintiffs produced sufficient evidence that the defendant was the single source of the decedent's exposure to asbestos, the plaintiffs need not also produce proof-of-dose evidence to overcome a no-evidence motion for summary judgment.

This approach, which conflicts with a holding of at least one other court of appeals, is troubling. Suppose that a plaintiff proffers sufficient evidence that he was not exposed to asbestos from any other source. Even so, absent evidence that he was exposed to a minimum disease-causing quantum of asbestos from the defendant, how could a jury reasonably conclude that the defendant caused him to incur a compensable asbestos-related injury?

At some point, this Court will need to take a case to examine this issue. We have not yet directly ruled upon questions concerning the quantitative evidence of dose with respect to single-source-exposure asbestos cases, and as this case reflects, the lower courts have exhibited confusion regarding the appropriate legal standards in the wake of our observation in *Bostic*.

I nonetheless concur in the Court's denial of the petition for review because the petition ultimately would not allow us to resolve the issue that I have identified. Indeed, the court of appeals' rejection of this Court's supposed dicta was itself arguably dicta given that court's holding that the plaintiffs *did* sufficiently adduce proof-of-dose evidence to overcome the no-evidence summary-judgment motion.

I therefore write separately to discuss the issue that warrants the Court's consideration in an appropriate case, even though I must agree that this case is not the one to do it. In so doing, I also address the court of appeals' doubtful authority to disregard this Court's legal statements.

# I

I recount the facts in the light most favorable to the nonmovants. Frank and Carolyn Burford were married for more than fifty years, thirty

of which Frank spent working for Howmet's aluminum-smelting plant in Rockdale, Texas. Nearly every day for twenty-five of those years, when Frank returned home from work, Carolyn shook out and washed his clothes, which contained the asbestos that traveled with Frank from his job at Howmet to his home with Carolyn. By 2006, Carolyn had developed breathing issues and was diagnosed with asbestosis. She passed away nine years later.

Carolyn's surviving family members (collectively, the Burfords) sued Howmet, alleging that it was responsible for Carolyn's asbestosis, given her almost daily, two-and-a-half-decade-long handling of her husband's work clothes. The multidistrict-litigation panel transferred the case to the 11th District Court of Harris County as a tag-along to *In re: Asbestos Litigation*, which was already pending there. Following discovery, Howmet moved for no-evidence summary judgment, asserting that the Burfords could not produce sufficient evidence of substantial-factor causation.

Relevant to the motion was this Court's opinion in *Merrell Dow Pharmaceuticals, Inc. v. Havner*, in which we explained that for the evidence to be legally sufficient as to substantial-factor causation, a plaintiff must proffer either (1) direct, scientifically reliable evidence of causation *or* (2) epidemiological studies showing the exposure caused by the defendant more than doubled the risk of developing his condition. *See* 953 S.W.2d 706, 714–17 (Tex. 1997). We have called the latter method "the alternative approach," which we said in *Bostic* "*might be* unnecessary" to prove substantial-factor causation where "the plaintiff can establish with reliable expert testimony that (1) his exposure to a particular toxin is the

3

only possible cause of his disease, and (2) the only possible source of that toxin is the defendant's product." 439 S.W.3d at 352 (emphasis added).

Relying on these precedents, the trial court granted Howmet's no-evidence summary-judgment motion. It held that the Burfords did not produce more than a scintilla of direct-causation evidence because they did not sufficiently negate the possibility of Carolyn's exposure to asbestos from some other source. As for "the alternative approach" to proving substantial-factor causation, the Burfords did not present epidemiological studies showing that Carolyn's exposure to asbestos from Howmet more than doubled her risk of developing asbestosis. The court thus rendered judgment for Howmet.

The court of appeals reversed, holding that the Burfords *did* present evidence of substantial-factor causation sufficient to overcome Howmet's no-evidence summary-judgment motion. 693 S.W.3d 756, 769–71 (Tex. App.—Houston [14th Dist.] 2024). The court held that the Burfords raised a direct-causation fact issue by presenting scientifically reliable evidence that "Carolyn was exposed to and inhaled the asbestos that came from [Howmet]," "Carolyn's exposure to asbestos [was] the only possible cause of asbestosis," and "[Howmet] was the source of all the asbestos to which Carolyn was exposed." *Id.* at 767. In this single-source-exposure asbestos case, the court continued, the Burfords were not required to resort to the alternative approach and present epidemiological studies. *Id.*

To reach this conclusion, the court of appeals noted that "[t]he parties have not cited and research has not revealed a case addressing how a plaintiff may prove substantial-factor causation in a case in which the plaintiff allegedly contracted asbestosis and *one party* was the source

4

of *all* the asbestos to which the plaintiff was exposed." *Id.* at 766 (emphasis added).

The court of appeals deemed itself free to disregard what it called "nonbinding obiter dicta" from *Bostic* in which this Court observed that "even in a single-exposure case, . . . proof of dose would be required." *Id.* (quoting *Bostic*, 439 S.W.3d at 352, and stating that the *Bostic* Court was merely "pointing out possibilities rather than making very deliberate statements"). The court declared instead that proof of dose is *not* required in a single-source-exposure asbestos case because "[i]f no other party contributed asbestos fibers to the air that the plaintiff inhaled," then a jury could "reliably and reasonably" conclude "that the defendant sufficiently contributed to the aggregate dose of asbestos the plaintiff inhaled" such that it was the substantial cause of the plaintiff's compensable asbestos-related injury—namely, asbestosis. *See id.* at 767. The proof of dose could simply be inferred, the court concluded, as "whatever the dose or amount of asbestos to which Carolyn was exposed, that dose or amount *must have been sufficient* to cause asbestosis." *Id.* (emphasis added). Yet in a footnote the court also held that even if proof of dose were required, the Burfords had produced sufficient evidence to overcome Howmet's no-evidence summary-judgment motion. *Id.* at 770 n.10.

Howmet's petition for review followed. It does not focus on the proof-of-dose issue that I have just described. Rather, it primarily argues that the court of appeals created a new exception for single-source-exposure asbestos cases and that, *regardless* of whether the defendant is the only source of exposure, a proper epidemiological study is always required in every case. *Cf. Bostic*, 439 S.W.3d at 352 (noting that "the alternative

5

approach embraced in *Havner might be* unnecessary" (emphasis added)). I take no position on that assertion and instead address what, in my view, matters most to our jurisprudence: the court of appeals' jettisoning of our considered statement in *Bostic* that proof of dose is required even in single-source-exposure asbestos cases like this one.

## II

I briefly survey our relevant precedents and then turn to the legal issue that will likely require our consideration. I then discuss the court of appeals' characterization of our statement in *Bostic* as "dicta." I conclude by addressing why this case does not allow us to reach the key issue, which is why, with some reluctance, I concur in denial of the petition.

## A

*Havner* explained two ways for a toxic-tort plaintiff to produce legally sufficient evidence of substantial-factor causation. 953 S.W.2d at 714–17. The first is by "direct, scientifically reliable proof," and the second is by epidemiological studies (if those studies meet certain requirements). *Id.* at 715–16, 720 (explaining that a study must "show that the risk of an injury or condition in the exposed population was more than double the risk in the unexposed or control population" and that the plaintiff must be "similar to those in the studies").

We extended *Havner*'s substantial-factor-causation framework to asbestos-related litigation in *Borg–Warner Corp. v. Flores*, 232 S.W.3d 765, 766, 771–73 (Tex. 2007). At the time, "[p]erhaps the most widely cited standard for proving causation in asbestos cases [was] the *Lohrmann* 'frequency, regularity, and proximity' test." *Id.* at 769 (citing *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1163 (4th Cir. 1986)). And

6

while we thought the "frequency, regularity, and proximity" test was "appropriate" and even "necessary" to establish causation, we also explained that "those terms d[id] not, in themselves, capture the emphasis our jurisprudence ha[d] placed on causation as an essential predicate to liability." *Id.* at 770, 772. The lodestar was ultimately "whether the asbestos in the defendant's product was a *substantial factor* in bringing about the plaintiff's injuries." *Id.* at 770 (emphasis added); *see also Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 532 (Tex. 2025) (discussing the "slippery word 'substantial,'" which "can be difficult to nail down in many contexts").

Elucidating substantial-factor causation in the asbestos context was "[o]ne of toxicology's central tenets"—that "the dose makes the poison." *Flores*, 232 S.W.3d at 770 (internal quotation marks omitted). The *Flores* Court, therefore, required "[d]efendant-specific evidence relating to the approximate dose to which the plaintiff was exposed, *coupled with* evidence that the dose was a substantial factor in causing the asbestos-related disease." *Id.* at 773 (emphasis added). To be sure, the epidemiological studies discussed in *Havner* could prove substantial-factor causation in this context because they may contain "evidence of the approximate quantum of [asbestos] fibers to which [the plaintiff] was exposed." *Id.* at 772 (discussing *Havner*, 953 S.W.2d at 715, 717–18). Proof of dose, in other words, closed the gaps in the then-prevailing "frequency, regularity, and proximity" test, ensuring that the defendant's "asbestos fibers were released in an amount sufficient to cause [the plaintiff's] asbestosis." *Id.*

This Court did not stray from the proof-of-dose requirement in *Bostic*. There, we clarified that "in the absence of direct proof of causation,"

a plaintiff may nevertheless establish causation through what *Havner* described as "scientifically reliable proof that the plaintiff's exposure to the defendant's product more than doubled his risk of contracting the disease." *Bostic*, 439 S.W.3d at 350. Justice Lehrmann's dissent, however, was concerned with the Court's extending *Havner* to "cases where the only conceivable source of exposure to a toxin [was] the defendant" (*i.e.*, single-source-exposure asbestos cases). *See id.* at 352. In response to that concern, we reiterated that *Havner*'s "alternative approach" was just that—an alternative. *See id.* In a single-source-exposure case, "[i]f the plaintiff can establish with reliable expert testimony that (1) his exposure to a particular toxin is the only possible cause of his disease, and (2) the only possible source of that toxin is the defendant's product," this proof might establish "*direct* proof of causation," and resort to *Havner*'s alternative approach "might be unnecessary." *Id.* (emphasis added).

But we elaborated that "even in a single-exposure case, we think that proof of dose would be required." *Id.* The dissent agreed with this point. *See id.* at 372 (Lehrmann, J., dissenting) (explaining that "plaintiffs may employ evidence of approximate dose to prove causation by direct, scientifically reliable evidence").

**B**

From *Havner*, to *Flores*, to *Bostic*, this Court has "held firm to the principle that liability in tort must be based on proof of causation by a preponderance of the evidence." *See id.* at 340 (majority op.). And along the way, we have rejected any "approach [that] negates the plaintiff's burden to prove causation by a preponderance of the evidence." *Id.* It is true, of course, that *Havner*, *Flores*, and *Bostic* each arrived at this Court

8

following entry of a jury verdict and not the grant or denial of a no-evidence or even a traditional summary-judgment motion. *Havner*, 953 S.W.2d at 709; *Flores*, 232 S.W.3d at 768; *Bostic*, 439 S.W.3d at 337. And equally true, *Flores* and *Bostic* were not single-source-exposure asbestos cases like this one. *See Flores*, 232 S.W.3d at 766, 768; *Bostic*, 439 S.W.3d at 336.

To me, therefore, the question that this Court must eventually address is whether we really meant what we said in *Bostic*—that proof of dose is required in *every* case. More specifically, the Court should analyze whether any of the distinctions between cases like this one and cases like *Havner*, *Flores*, and *Bostic* matter, including whether the lack of any quantitative evidence of dose is fatal to a plaintiff's attempt to create a fact question that would defeat summary judgment on substantial-factor causation in a single-source-exposure case. At this point, I would likely vote to reaffirm *Bostic*'s proof-of-dose requirement, or at least to clarify under what circumstances proof of dose may be sufficiently inferred to survive summary judgment.

If a plaintiff or decedent (1) had asbestosis and (2) had been exposed to asbestos from a single source, then it seems logical enough that (3) he can only have developed asbestosis from that one source. That logic does not hold up, however, if there is a dispute about whether the plaintiff had asbestosis or if there is no evidence that the amount of exposure (the dose) was more than insignificant.

Said differently, if a defendant is allegedly the only possible source of asbestos exposure, but there is no evidence of exposure to a dose of asbestos that causes asbestosis, then *either* the disease was not actually asbestosis in the first place *or* the case did not actually involve a single

9

source of exposure. Either consequence should preclude holding the defendant legally responsible under the plaintiff's theory of the case.

Our proof-of-dose requirement, as I have explained, ensures that the plaintiff meets his burden by a preponderance of the evidence. By dispensing with the proof-of-dose requirement, the court of appeals below may have inched dangerously close to a mutated "frequency, regularity, and proximity" test, one not unlike what we said was "necessary but not sufficient" for substantial-factor causation. *See Flores*, 232 S.W.3d at 772. By denying this petition, the Court expresses no view—certainly not approval—of the court of appeals' assertion that proof of dose is not required in a single-exposure case. "[D]eclining to review a case is not evidence that the Court agrees with the law as decided by the court of appeals." *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006); *accord, e.g.*, *Lane v. CLD*, 715 S.W.3d 349, 358 n.6 (Tex. 2025).

## C

Beyond that, it is far from clear to me that the lower courts are free to disregard *Bostic*'s statements as mere dicta, as the court of appeals did below.

"We have recognized two types of dicta: judicial dictum and obiter dictum." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 399 (Tex. 2016) (citing *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex. 1964)). We have said that "[o]biter dictum is not binding as precedent." *Id.* Judicial dictum, in contrast, is "a statement made deliberately after careful consideration and for future guidance in the conduct of litigation." *Id.* (quoting *Lund v. Giauque*, 416 S.W.3d 122, 129 (Tex. App.—Fort Worth 2013, no pet.)). Judicial dictum is "at least persuasive and should be

10

followed unless found to be erroneous." *Id.* (quoting *Palestine Contractors*, 386 S.W.2d at 773).

Assuming that the distinction between judicial and obiter dictum is valid, our statement in *Bostic* likely falls on the judicial side. Our observation that "even in a single-exposure case, we think that proof of dose would be required," *Bostic*, 439 S.W.3d at 352, was not just a passing comment or a drive-by assertion collateral to the issue at hand. Rather, it was an application of the "central tenet[]" that "the dose makes the poison." *Id.* (quoting *Flores*, 232 S.W.3d at 770). And the Court made its thoughtful statement about single-exposure cases in response to the dissent, which "suggest[ed] that we would require the application of *Havner* even in cases where the only conceivable source of exposure to a toxin is the defendant." *Id.*

In other words, when the Court made the comment about proof of dose, the justices' minds were specifically focused on single-exposure cases. Because *Bostic*'s comment was made after careful consideration, our precedents required the court of appeals to treat it as binding—or at least to follow it unless the court determined that our statement was affirmatively "erroneous." *Seger*, 503 S.W.3d at 399. To be clear, I am less than confident that this latter option is in fact open to a lower court, as opposed to its being a basis for *this* Court to reject any precedential force in our own dicta. We did not opine in *Seger* as to *who* is empowered to decide that dicta (and certainly not dicta from this Court, which was not at issue in that case) is "erroneous." Rather, my point is that if a court of appeals can *ever* disregard judicial dicta from this Court, it could not do so without affirming that such a heightened standard is met.

11

Instead, the court of appeals proceeded as if the statement in *Bostic* did not really exist and treated the issue as one of "first impression." 693 S.W.3d at 767. I pause to note that this disregard of *Bostic* is especially odd given that it was wholly unnecessary. The court of appeals concluded that the Burfords *did* raise a fact issue as to proof of dose. *See id.* at 770 n.10. Why rush in to classify a statement of this Court as mere obiter dicta, and then repudiate that statement, when the court of appeals' judgment would be the same even without that gratuitous conclusion?

It may also be true that our distinction between judicial dicta and obiter dicta is more confusing than helpful. I cannot see how it would not be better for lower courts to follow legal pronouncements found in Texas Supreme Court opinions without trying to parse them out as various forms of dicta or holdings. As an empirical matter, many lower courts do indeed feel obliged to follow dicta from a higher court. *See, e.g.*, Randy J. Kozel, *The Scope of Precedent*, 113 Mich. L. Rev. 179, 198 & n.125 (2014) (noting that "[m]any lower courts have described Supreme Court statements as entitled to deference even when those statements were made in dicta" and collecting cases). One study found that

> the gap between dicta-in-theory and dicta-in-practice is strikingly large. Lower courts often mention the distinction between holding and dictum but hardly ever invoke it in consequential ways . . . . [L]ower courts made meaningful use of the holding-dictum distinction in fewer than 1 in every 3000 cases.

David Klein & Neal Devins, *Dicta, Schmicta: Theory Versus Practice in Lower Court Decision Making*, 54 Wm. & Mary L. Rev. 2021, 2025–26 (2013). In other words, "there is a dramatic gulf between dicta-in-theory—where the line separating dictum from holding is extremely

consequential—and dicta-in-practice—where the holding-dictum distinction seems largely irrelevant." *Id.* at 2042. And as a prescriptive matter, it can often be difficult to distinguish between an opinion's "holding" and "dictum." *See, e.g.*, Andrew C. Michaels, *The Holding–Dictum Spectrum*, 70 Ark. L. Rev. 661, 661–64 (2017).

That is why the Wisconsin Supreme Court, for example, has instructed lower courts not to try to draw that line themselves: "We therefore conclude that to uphold the principles of predictability, certainty, and finality, the court of appeals may not dismiss a statement from an opinion by this court by concluding that it is dictum." *Zarder v. Humana Ins. Co.*, 782 N.W.2d 682, 694 (Wis. 2010). This Court's cases, too, primarily emphasize not any exception but the rule that "courts of appeals are not free to disregard pronouncements from this Court." *In re K.M.S.*, 91 S.W.3d 331, 331 (Tex. 2002) (citing *Lofton v. Tex. Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989)).

Lower courts *are* free, of course, to criticize supposed dicta. Indeed, they are welcome to criticize holdings. But *following* what this Court says would facilitate this Court's clarification, if clarification is indeed needed. Disregarding "dicta," and then adopting the opposite rule, instead forces the Court to grant a petition for review if the Court intends to adhere to how it has already described the law. Lower courts perform their function best by leaving the prerogative to change this Court's legal pronouncements to this Court, which also shifts *responsibility* back to this Court. That is what would happen if a lower court says, in effect, "We think that this was a dictum, and not a particularly good one, but it's up to the Supreme Court to fix its own mess."

13

**D**

But resolution will not come from this case. As noted, the court of appeals summarily concluded that even if the Burfords *were* required to establish proof of the dose of asbestos to which Carolyn was exposed, the Burfords did so. 693 S.W.3d at 770 n.10. Further illustrating why it was gratuitous for the court of appeals to reject *Bostic*'s statement, the trial court had found that the Burfords' expert cited published literature showing dose levels at which asbestos exposure has been determined to cause asbestosis and that Carolyn's alleged dose was consistent with those levels.

In other words, because the trial court found that the Burfords presented sufficient evidence to establish proof of dose, this case does not in fact implicate the court of appeals' questionable legal conclusion—a conclusion that might *itself* be dicta. Even if proof of dose is indispensable, the Burfords presented sufficient evidence to survive summary judgment. In any event, the proof-of-dose requirement is not central to Howmet's petition. Its primary issue—about dispensation from the epidemiological studies—is not the one that requires our review.

But there is confusion and conflict among the courts of appeals on the proof-of-dose issue, and clarification from this Court in a future case is warranted. At least one court of appeals has suggested, consistent with *Bostic*, that proof of dose may be required in a single-source-exposure case. *See Union Carbide Corp. v. Torres*, No. 13-10-00325-CV, 2019 WL 6905229, at *11 (Tex. App.—Corpus Christi–Edinburg Dec. 19, 2019, pet. denied) (recognizing the premise that single-source-exposure cases may require proof of dose and stating that the evidence "satisfie[d] . . . *Flores* and *Bostic*'s emphasis on dose"). And another has rejected a plaintiff's

14

attempt to escape the proof-of-dose requirement after she argued that it "d[id] not apply" because only a single source exposed the decedent to asbestos. *See Mullins v. Atl. Richfield Co.*, No. 01-20-00013-CV, 2021 WL 2931355, at \*8 (Tex. App.—Houston [1st Dist.] July 13, 2021, no pet.).

The *Mullins* court expressly relied on our statement in *Bostic* that "'a single-exposure case' requires 'proof of dose'" and concluded that the plaintiff "was required to offer competent evidence of dose but failed to do so," notwithstanding her single-source-exposure allegations. *Id.* (quoting *Bostic*, 439 S.W.3d at 352). Other courts would be wise to do so. If those courts have any doubts about *Bostic*, they would help this Court by detailing those doubts but leaving to this Court any decision about whether to depart from what we said in *Bostic*. Respectfully identifying potential improvements in this Court's jurisprudence—whether in its clear holdings or in what might be called its dicta—constitutes a valuable service to the legal system that the courts of appeals can offer. I hope that they will not censor themselves, but neither should they push the envelope by making rulings that contradict this Court's statements about Texas law.

\*   \*   \*

For these reasons, and without expressing any other view of the underlying merits of this case, I concur in the Court's denial of the petition for review.

Evan A. Young
Justice

**OPINION FILED:** April 17, 2026

15