**Reversed and Remanded and Opinion filed February 27, 2024.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-22-00417-CV

---

**FRANK BURFORD, INDIVIDUALLY AND AS REPRESENTATIVE OF THE HEIRS AND ESTATE OF CAROLYN BURFORD, DECEASED; WESLEY BURFORD, INDIVIDUALLY; AND LESLIE SCHELL, INDIVIDUALLY, Appellants**

**V.**

**HOWMET AEROSPACE, INC., F/K/A ARCONIC, INC., F/K/A ALCOA, INC., Appellee**

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2017-70076-ASB**

---

# O P I N I O N

In this asbestos case, the surviving husband and children of a decedent asserted wrongful death and survival claims against the husband's former employer, appellee/defendant Howmet Aerospace, Inc., f/k/a Arconic, Inc., f/k/a Alcoa, Inc. ("Alcoa"), alleging that the decedent suffered injuries and death as a result of asbestosis caused by her inhalation of asbestos fibers from Alcoa's facility

in Rockdale, Texas, that her husband brought home on his work clothes. The trial court granted Alcoa's no-evidence summary-judgment motion, concluding that there is no evidence of substantial-factor causation. Because the plaintiffs presented direct, scientifically reliable proof of causation, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Carolyn and Frank Burford married in November 1962, and they were married until Carolyn's death on August 9, 2015. From 1963 to 1993 Frank worked for Alcoa at its aluminum smelter in Rockdale, Texas ("Rockdale Plant"). He worked with or around asbestos-containing materials on a regular basis while working at the Rockdale Plant as a potlining helper and then as a potlining supervisor. According to Frank, Carolyn washed Frank's work clothes separately from the other clothes every day that Frank worked for about the first twenty-five years that Frank worked at Alcoa.

In 2006 Carolyn developed shortness of breath and went to see Dr. Dominic deKeratry, a pulmonologist. Dr. deKeratry took an exposure history from Carolyn, during which she explained how her husband had worked with asbestos at the Rockdale Plant and how she had washed his work clothes that had asbestos dust on them. Carolyn told Dr. deKeratry that she used to try to get some of the dust off of her husband's work clothes before putting them in the washing machine. Dr. deKeratry diagnosed Carolyn as suffering from asbestosis.

Dr. deKeratry treated Carolyn for asbestosis from 2006 to 2009 and from 2013 until Carolyn's death. Between 2009 and 2013, Carolyn was treated by another pulmonologist. On August 9, 2015, Carolyn died. Her death certificate lists the immediate cause of death as "hypoxic respiratory failure" due to or as a consequence of asbestosis.

2

In July 2017, appellants/plaintiffs Frank Burford, Individually and as Representative of the Heirs and Estate of Carolyn Burford, Deceased; Wesley Burford, Individually; and Leslie Schell, Individually (the "Burford Parties") filed suit against Alcoa in County Court at Law No. 3 in Dallas County. The Multidistrict Litigation Panel transferred this case to the 11th Judicial District Court of Harris County for pretrial proceedings as a tag-along case to Cause No. 2004-03964, styled *In re: Asbestos Litigation* pending before Judge Mark Davidson. Liberally construing the Burford Parties' live pleading, they assert wrongful death and survival claims against Alcoa, seeking to recover based on Alcoa's negligence, strict products liability, and negligence per se.[1] The Burford Parties alleged that Carolyn was exposed to asbestos-containing products as a result of Frank's employment by Alcoa at the Rockdale Plant from 1963 through 1993. According to the Burford Parties, Frank worked with or was exposed to asbestos-containing products or machinery requiring or calling for the use of asbestos or asbestos-containing products, which caused the release of respirable asbestos fibers used, produced, or sold by Alcoa or its predecessors while Frank was working at the Rockdale Plant. In doing so, the Burford Parties contend that Frank's clothing, tools, and body were contaminated with great quantities of asbestos fibers and that Frank brought these asbestos fibers home with him on his clothing and body. The Burford Parties maintain that Carolyn routinely washed Frank's work clothing and thus inhaled large quantities of asbestos fibers. The Burford Parties allege that Carolyn suffered injuries and death as a result of asbestosis proximately caused by her inhalation of asbestos fibers from Alcoa's facility in Rockdale that her husband brought home. The Burford Parties seek to

_____

[1] The Burford Parties also sued Guard-Line, Inc. and LGS Technologies, L.P., but they later nonsuited their claims against these two defendants.

recover personal injury damages suffered by Carolyn before her death, damages for their mental anguish and loss of consortium, pecuniary damages, and exemplary damages.

Alcoa filed a no-evidence summary-judgment motion asserting that there is no evidence of substantial-factor causation, an essential element in each of the Burford Parties' claims ("No Evidence Motion"). Alcoa asserted five other no-evidence grounds. Alcoa also filed a motion to exclude certain opinions of Dr. Steven Haber ("Motion to Exclude Haber") and a motion to strike the opinions and testimony of Jerome Spear ("Motion to Exclude Spear"). Haber and Spear are expert witnesses for the Burford Parties. The Burford Parties filed a response in opposition to each of the three motions, including evidence. After a hearing at which Spear testified, the trial court denied Alcoa's Motion to Exclude Spear.

At the end of an oral hearing on the No Evidence Motion, the trial court announced that it was granting the motion and that it was doing so reluctantly and with the hope that its ruling would be reversed on appeal. The trial court stated that it thought it was bound to grant the motion because this case does not present an exception to the doctrine of *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997). The trial court later signed an order denying Alcoa's Motion to Exclude Haber and granting the No Evidence Motion only on the ground that there is no evidence of substantial-factor causation. In the order, the trial court found as follows:

1.    [The Burford Parties'] evidence regarding causation of [Carolyn's] asbestosis does not rise to the level of direct, scientifically reliable proof of causation as required by *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706 (Tex. 1997). [The Burford Parties] have not and cannot establish that [Carolyn] was not exposed to asbestos from some other source.

4

*Havner* requires either that a defendant's negligence directly caused the disease OR that, using epidemiological evidence that there is a doubling of the risk within a 95% statistical probability.

2.  Because [the Burford Parties'] evidence does not constitute evidence of direct, scientifically reliable proof of causation as required by *Havner*, [the Burford Parties] must prove [Carolyn's] dose of asbestos exposure from asbestos brought home on her husband's clothing from the [Rockdale Plant] doubled her risk of developing asbestosis, as set forth in *Merrill Dow* and *Bostic* v. *Georgia-Pacific Corporation*, 439 S.W.3d 332 (Tex. 2014).

3.  The Court considered the [Motion to Exclude Haber]. The parties waived oral argument for this Motion. After considering the pleadings and evidence on file, the Court denies [the Motion to Exclude Haber] and finds Dr. Haber's opinions reliable and admissible pursuant to *E.I. DuPont DeNemours & Co., Inc.*, 923 S.W.2d 549 (Tex. 1995).

4.  [The Burford Parties'] expert, Dr. Steven Haber, testified that a calculation cannot be made to determine what dose of asbestos exposure doubles the risk.

5.  Dr. Haber did cite published literature showing dose levels at which asbestos exposure has been determined to cause asbestosis, and [the Burford Parties'] alleged dose was consistent with these levels. For example, he cited published literature stating asbestosis can result from as few as five (5) fiber years of exposure. He also cited published literature showing a doubling of the risk of developing lung cancer with fewer than eleven (11) fiber years of asbestos exposure, and testified it is generally accepted in the scientific community that asbestosis develops at the same or similar exposure level as lung cancer. Regardless, Dr. Haber did *not* cite published literature showing that any level of exposure doubles the risk of developing asbestosis, as *Bostic* requires.

6. Based on the summary judgment evidence presented to this Court, [the Burford Parties] have not met the causation requirements of either *Merrell Dow v. Havner* or *Bostic v. Georgia Pacific.* The Court is of the opinion [the Burford Parties'] evidence does not meet *Havner's* standard of direct, scientifically reliable proof of causation. The Court is further of the opinion [the Burford Parties'] evidence does not meet the doubling of the risk standard of causation set forth in *Bostic v. Georgia Pacific.* Based on the record before this Court and all Texas Supreme Court precedent, the Court is of the opinion it has no choice but to GRANT [the No Evidence Motion].

The trial court granted the No Evidence Motion "on the issue of causation as set forth in this order and on no other basis."[2] After the trial court disposed of all of the Burford Parties' claims against Alcoa on summary judgment, the trial court granted the Burford Parties' request to nonsuit their claims against the other two defendants, thus creating a final and appealable judgment. The Burford Parties timely appealed the trial court's judgment.

## II. ANALYSIS

The trial court granted the No Evidence Motion only on its first ground— that there is no evidence of substantial-factor causation. The trial court expressly did not grant summary judgment based on the other five grounds in the No Evidence Motion. Alcoa has not presented any of the other five grounds to this

---

[2] Other than the trial court's denial of the Motion to Suppress Haber and the Motion to Suppress Spear, the record does not reflect that the trial court ruled on any objections by Alcoa to the summary-judgment evidence, either expressly or implicitly, nor did Alcoa object to any refusal by the trial court to rule on its objections. Therefore, Alcoa waived all of its objections to the form of the summary-judgment evidence, other than the objections to form asserted in the Motion to Suppress Haber or the Motion to Suppress Spear. *See Transcontinental Ins. Co v. Briggs Equip. Trust*, 321 S.W.3d 685, 700 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

court by a cross-point or cross-issue, nor has Alcoa briefed any argument that this court should affirm the summary judgment in whole or in part based on one of these grounds. In this context, we may not consider any of the other summary-judgment grounds as a potential basis for affirming the trial court's judgment. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 150 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We may only affirm the trial court's judgment on the ground that there is no evidence of substantial-factor causation.

On appeal the Burford Parties assert in a single issue that the trial court erred in granting the No Evidence Motion. Under that issue, the Burford Parties assert the following reasons as to why the trial court erred:

(1) The Burford Parties provided the trial court with more than a scintilla of evidence constituting direct, scientifically reliable proof of causation as required by *Havner*;[3]

(2) The Burford Parties provided the trial court with more than a scintilla of evidence establishing the dose of asbestos that doubles the risk of developing asbestosis, as required by *Bostic*;[4]

(3) The *Bostic* causation standard should not apply in an asbestosis case given that the mathematical equation for calculating relative risk in an asbestosis case leads to absurd results; and

(4) If the causation standard set forth in *Bostic* does not apply to an asbestosis case, this court should recognize the differences between asbestosis and mesothelioma cases in the causation context, fashion a new test for establishing causation in asbestosis cases, and conclude that evidence submitted by the Burford Parties satisfies this test.

---

[3] *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 715 (Tex. 1997).

[4] *See Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332, 350 (Tex. 2014).

In reviewing a no-evidence summary judgment, we ascertain whether the summary-judgment evidence raises a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *See Tipte Industries, Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See id*. The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

Alcoa argues that the summary-judgment evidence does not raise a fact issue as to substantial-factor causation. If this court determines that the trial court erred in granting the No Evidence Motion based on all the summary-judgment evidence, Alcoa also asserts in a conditional cross-issue that the trial court abused its discretion in denying Alcoa's Motion to Exclude Haber and its Motion to Exclude Spear. Alcoa asserts that the inadmissibility of Haber and Spear's opinions requires summary judgment for Alcoa. Liberally construing Alcoa's briefing, Alcoa argues that if the evidence challenged in the Motion to Exclude Haber and the Motion to Exclude Spear were excluded, the summary-judgment evidence would not raise a fact issue as to substantial-factor causation, and thus the trial court's judgment may be affirmed on this basis. A decision to admit or exclude evidence rests within the sound discretion of the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles. *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000).

8

**A.** **Does the summary-judgment evidence raise a fact issue as to whether Alcoa was the source of all the asbestos to which Carolyn was exposed?**

One issue in this case is whether Alcoa was the source of all the asbestos to which Carolyn was exposed.[5] The trial court found that the Burford Parties "have not and cannot establish that [Carolyn] was not exposed to asbestos from some other source," thus indicating that the Burford Parties had the burden to prove that Carolyn was not exposed to asbestos from any source other than Alcoa and that they failed to carry this burden. The Burford Parties argue that the trial court erred in imposing this burden on them.

The summary-judgment evidence includes testimony by Frank (1) explaining various ways in which his work clothes were exposed to dust containing asbestos while working at the Rockdale Plant from 1963 through 1993, (2) describing how his work clothes were dirty when he returned home from work and how Carolyn washed his work clothes for the first 25 years that he worked at Alcoa, (3) noting that Carolyn would wash his work clothes separately, shake them out to remove the loose dust, and sometime smell the dirty work clothes. The summary-judgment evidence shows that from 1952 until her marriage to Frank in 1962, Carolyn lived all but one year at her parent's home. Evidence shows that during this time period Carolyn's father worked as a crane operator at the Rockdale Plant and that crane operators at that time were exposed to asbestos fibers. Though the evidence does not show the extent to which Carolyn was exposed to asbestos as a result of her father's exposure, any such exposure was also to asbestos from Alcoa's Rockdale Plant.

---

[5] In this opinion a reference to all the asbestos to which Carolyn or another person was exposed does not include the low background levels of asbestos in the ambient air to which everyone is exposed.

Dr. Haber testified that "the only exposures to asbestos that [Carolyn] had was from take-home asbestos exposures brought home from Alcoa." Also, when asked, "Doctor, within a reasonable degree of medical probability, based on your education, training, and experience and based on the materials reviewed, to where do you point to the entirety of Carolyn[] Burford's asbestos exposure?" Dr. Haber answered: "From take-home exposure from workers at the — the husband primarily and also to some degree the father from Alcoa. She had no other exposures outside and no — no work exposures herself." Spear testified that he went through Carolyn's work history to see if there were any sources of asbestos exposure other than Alcoa and that there were not. Thus, the summary-judgment evidence contains reliable expert testimony that Alcoa was the source of all the asbestos to which Carolyn was exposed.

The summary-judgment evidence shows that Carolyn was exposed to asbestos from Alcoa, and the summary-judgment evidence does not show any other plausible source of asbestos to which Carolyn was exposed. Therefore, the Burford Parties had no burden to prove that Carolyn was not exposed to asbestos from any source other than Alcoa. *See Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 80 (Tex. 2023) (stating that the plaintiff need not "negate every conceivable alternative cause imagined by the defendant or the court" and that the expert testimony "need only account for 'other plausible causes *raised by the evidence*'"); *Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332, 350 (Tex. 2014) (stating that the court did "not think it necessary or fair to require a plaintiff to track down every possible source of asbestos exposure and disprove that those other exposures caused the disease"); *Havner v. Merrell Dow Pharmaceuticals, Inc.*, 953 S.W.2d 706, 720 (Tex. 1997) (stating that "if there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding

those causes with reasonable certainty"). To the extent that the trial court imposed a burden on the Burford Parties to establish that Carolyn was not exposed to asbestos from any source other than Alcoa, the trial court erred. *See Helena Chem. Co.*, 664 S.W.3d at 80; *Bostic*, 439 S.W.3d at 350; *Havner*, 953 S.W.2d at 720.

Considering all the summary-judgment evidence in the light most favorable to the Burford Parties, crediting evidence favorable to them if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, the summary-judgment evidence would allow reasonable and fair-minded jurors to find that Alcoa was the source of all the asbestos to which Carolyn was exposed. Thus, the summary-judgment evidence raises a genuine fact issue as to whether Alcoa was the source of all the asbestos to which Carolyn was exposed. *See Helena Chem. Co.*, 664 S.W.3d at 80; *Bostic*, 439 S.W.3d at 350; *Tipte Industries, Inc.*, 286 S.W.3d at 310; *Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755; *Havner*, 953 S.W.2d at 720.

**B.**   **In a case in which a defendant was the source of all the asbestos to which the plaintiff was exposed, allegedly causing the plaintiff's asbestosis, what must the plaintiff show to raise a fact issue as to substantial-factor causation through direct, scientifically reliable proof?**

We start by reviewing some authorities cited by the parties. In *Havner* the plaintiffs alleged that Kelly Havner's use of the prescription drug Bendectin during pregnancy caused her child to be born with a limb reduction birth defect. *See Havner*, 953 S.W.2d at 708. The Havners did not contend that all limb reduction birth defects are caused by Bendectin, and their experts agreed that not all such birth defects are caused by Bendectin. *See id.* at 714. In this context, the *Havner* court answered the following question: "what must a plaintiff establish to raise a fact issue on whether Bendectin caused an individual's birth defect?" *Id*. The *Havner* court stated that toxic tort claimants may raise a fact issue on causation

11

through "direct scientifically reliable proof of causation," or they "may attempt to demonstrate that exposure to the substance at issue increases the risk of their particular injury." *Id.* at 715. In the second approach, "[t]he finder of fact is asked to infer that because the risk is demonstrably greater in the general population due to exposure to the substance, the claimant's injury was more likely than not caused by that substance." *Id.* The Havners attempted to show causation under the second method rather than the first. *See id.* The *Havner* court concluded that toxic tort claimants may show causation under the second method by using "properly designed and executed epidemiological studies" to show that there is more than a 'doubling of the risk.'" *Id.* at 717. The high court stated that this requirement was not a "litmus test" or "bright-line boundary" and that a single study would not suffice to establish legal causation. *Id.* at 718–19. The court concluded that a claimant must show that he or she is similar to those in the studies. *Id.* at 720. This would include proof that the injured person was exposed to the same substance, that the exposure or dose levels were comparable to or greater than those in the studies, that the exposure occurred before the onset of injury, and that the timing of the onset of injury was consistent with that experienced by those in the study. *Id.* The *Havner* court said it did not need to decide whether epidemiological evidence with a less than a doubling of the risk, coupled with other credible and reliable evidence, may be legally sufficient to support causation. *See id.* at 719. The court emphasized that evidence of causation from whatever source must be scientifically reliable and that post hoc, speculative testimony will not suffice. *See id.*

In *Flores* Arturo Flores sued the manufacturer of one of the types of asbestos-containing brake pads that he worked with during his employment as a brake mechanic, alleging that the asbestos he inhaled from that manufacturer's product caused his asbestosis. *See Borg-Warner Corp. v. Flores*, 232 S.W.3d 765,

766 (Tex. 2007). Flores did not contend that the manufacturer was the source of all the asbestos to which he was exposed; rather, he alleged he was exposed to asbestos from brake pads made by four different manufacturers. *See id*. at 766, 768. Flores did not seek to establish causation by through "direct scientifically reliable proof of causation." *See id*. at 769–74. The *Flores* court held that the trial evidence was legally insufficient to establish causation because the "record . . . reveal[ed] nothing about how much asbestos Flores might have inhaled." *Id*. at 771.

The *Flores* court also stated that:

- In asbestos cases courts must determine whether the asbestos in the defendant's product was a substantial factor in bringing about the plaintiff's injuries. *See id*. at 770.

- "The word 'substantial' is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense." *Id*. (quoting *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991)).

- One of toxicology's central tenets is that "the dose makes the poison." *Id*. at 770.

- "Asbestosis appears to be dose-related, 'so that the more one is exposed, the more likely the disease is to occur, and the higher the exposure the more severe the disease is likely to be." *Id*. at 771 (quoting 3 David L. Faigman et al., *Modern Scientific Evidence: The Law and Science of Expert Testimony* § 28:22, at 447 (2007)).

- In a case like *Flores* proof that only satisfies the *Lohrmann's* frequency-regularity-proximity test is necessary but not sufficient, as it provides none of the quantitative information necessary to support causation under Texas law. *See Flores*, 232 S.W.3d at 772; *see also Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162–63 (4th Cir. 1986) (applying Maryland law).

- Defendant-specific evidence relating to the approximate dose to which the plaintiff was exposed, coupled with evidence that the dose was a substantial factor in causing the asbestos-related disease is sufficient to prove substantial-factor causation. *See Flores*, 232 S.W.3d at 773.

- "[S]ome exposure 'threshold' must be demonstrated before a claimant can prove his asbestosis was caused by a *particular product*." *Id*. (emphasis added).

- It is not sufficient to simply establish that the plaintiff was exposed to some asbestos from a defendant; instead, there must be reasonable evidence that the exposure was of sufficient magnitude to exceed the threshold before a likelihood of causation may be inferred. *See id*.

Though the *Flores* court cited various sources addressing the levels of asbestos exposure associated with asbestosis, the court did not conclude that a particular amount or type of exposure to asbestos was necessary to cause asbestosis. *See id*. at 771–72. The *Flores* court based its holding on the plaintiff's failure to provide any evidence as to the amount of asbestos to which he was exposed, not on a determination that a certain level of exposure is required to cause asbestosis. *See id*.

In *Bostic* family members of Timothy Bostic sued Georgia-Pacific and 39 other defendants asserting wrongful death and survival claims and alleging that the defendants' products exposed Bostic to asbestos which caused his mesothelioma. *Bostic* v. *Georgia-Pacific Corporation*, 439 S.W.3d 332, 336–37 (Tex. 2014). The Bostic plaintiffs did not contend that Georgia-Pacific was the only source of the asbestos to which Bostic was exposed. *See id*. The Bostic plaintiffs did not seek to establish causation through "direct scientifically reliable proof of causation." *See id*. at 337–60. The *Bostic* court held that the trial evidence was legally insufficient to establish causation because there was no quantification of the amount of asbestos to which Bostic was exposed as a result of his exposure to Georgia-

Pacific's products. *See id*. at 355. The *Bostic* court concluded that the standard of substantial-factor causation recognized in *Flores* applied to mesothelioma cases, and addressed the meaning of substantial-factor causation in this context. *See id*. at 337–42, 346–53. The high court further held that the Bostic plaintiffs were not required to prove that but for Bostic's exposure to Georgia–Pacific's asbestos-containing products, Bostic would not have contracted mesothelioma. *See id*. at 342–46.

The *Bostic* court concluded that "*Havner* provides useful insights that should be integrated with our analysis here" and that *Havner* "offers an alternative method of establishing causation "'[i]n the absence of direct, scientifically reliable proof of causation.'" *Id*. at 347–48 (quoting *Havner*, 953 S.W.2d at 715). The *Bostic* court concluded that "in the absence of direct proof of causation, establishing causation in fact against a defendant in an asbestos-related disease case requires scientifically reliable proof that the plaintiff's exposure to the defendant's product more than doubled his risk of contracting the disease." *Bostic*, 439 S.W.3d at 350.

In response to a suggestion from the dissent that the *Bostic* court would require the application of *Havner* even in cases in which a single defendant was the source of all the asbestos to which the plaintiff was exposed, the *Bostic* court stated that "[i]f the plaintiff can establish with reliable expert testimony that (1) his exposure to a particular toxin is the only possible cause of his disease, and (2) the only possible source of that toxin is the defendant's product . . . , this proof might amount to direct proof of causation and the alternative approach embraced in *Havner* might be unnecessary." *Id*. at 352. The high court also said, "even in a single-exposure case, we think that proof of dose would be required." *Id*. The *Bostic* court concluded that in all asbestos cases involving multiple sources of

15

exposure, including mesothelioma cases, the standards for proof of causation in fact are the same and the court then articulated these standards. *See id*. at 352–53.

Though the *Bostic* court stated what might constitute "direct, scientifically reliable proof of causation" in a case in which one defendant was the source of all the asbestos to which the plaintiff was exposed, *Bostic* was not such a case, and thus these statements are not part of the court's holding. *See id*. In addition, these statements of what might be or what the court thinks would be required under a different fact pattern are not definite statements. The *Bostic* court appears to have been pointing out possibilities rather than making very deliberate statements for future guidance in the conduct of litigation. We conclude that these statements are nonbinding obiter dicta. *See State v. PR Investments and Specialty Retailers, Inc.*, 180 S.W.3d 654, 667, n.13 (Tex. App.—Houston [14th Dist.] 2005) (en banc), *aff'd*, 251 S.W.3d 472, 473 (Tex. 2008). The parties have not cited and research has not revealed a case addressing how a plaintiff may prove substantial-factor causation in a case in which the plaintiff allegedly contracted asbestosis and one party was the source of all the asbestos to which the plaintiff was exposed. Thus, we must address this issue of apparent first impression.[6] After careful consideration, we conclude that in today's case one way for the Burford Parties to

---

[6] Alcoa relies on the plurality opinion in *Neely v. Union Carbide Corp*. and cites a statement from the opinion as a statement by this court. *See* 619 S.W.3d 839, 842 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (plurality op.). This opinion is a nonbinding plurality opinion, and the statements in the opinion are those of a single justice, not of this court. *See id*. Moreover, the decedent in *Neely* suffered from mesothelioma, not asbestosis, and Union Carbide was not the source of all the asbestos to which the decedent was exposed. *See id*. at 842, 848–49. Alcoa also relies on the First Court of Appeals's opinion in *Mullins v. Atlantic Richfield Co.*, No. 01-20-00013-CV, 2021 WL 2931355 (Tex. App.—Houston [1st Dist.] Jul. 13, 2021, no pet.) (mem. op.) The decedent in *Mullins* suffered from mesothelioma, not asbestosis, and Atlantic Richfield was not the source of all the asbestos to which the decedent was exposed. *See id*. at *1, 2, 9. Neither *Neely* nor *Mullins* is on point.

raise a fact issue as to whether asbestos from Alcoa was a substantial factor in causing Carolyn's asbestosis through "direct, scientifically reliable proof of causation" is by presenting (1) evidence that Carolyn was exposed to and inhaled asbestos that came from Alcoa; (2) reliable expert testimony that Carolyn's exposure to asbestos is the only possible cause of asbestosis; and (3) proof that Alcoa was the source of all the asbestos to which Carolyn was exposed. *See Bostic*, 439 S.W.3d at 352; *Havner*, 953 S.W.2d at 715. The *Flores* court stated that if the dose of asbestos from the defendant in question sufficiently contributed to the aggregate dose of asbestos inhaled by the plaintiff from all sources, then the dose from the defendant may be considered a substantial factor in causing the plaintiff's asbestosis. *See Flores*, 232 S.W.3d at 772. If no other party contributed asbestos fibers to the air that the plaintiff inhaled, then it may reliably and reasonably be concluded that the defendant sufficiently contributed to the aggregate dose of asbestos the plaintiff inhaled. If reliable expert testimony shows that only exposure to asbestos can cause asbestosis and if Alcoa was the source of all the asbestos to which Carolyn was exposed, then the evidence directly proves that asbestos from Alcoa was a substantial factor in causing Carolyn's asbestosis. In this situation, whatever the dose or amount of asbestos to which Carolyn was exposed, that dose or amount must have been sufficient to cause asbestosis because only asbestos exposure causes this disease and Alcoa was the source of all the asbestos to which Carolyn was exposed. When proving substantial-factor causation through direct, scientifically reliable proof, it is not necessary to show that the asbestos from Alcoa more than doubled Carolyn's risk of suffering from asbestosis. *See Bostic*, 439 S.W.3d at 349.

17

**C.   Does the summary-judgment evidence raise a fact issue as to whether asbestos from Alcoa was a substantial factor in causing Carolyn's asbestosis?**

The Burford Parties submitted almost 1,200 pages of evidence along with their response to the No Evidence Motion, and they incorporated by reference more than 1,700 pages of evidence that they filed in response to the Motion to Suppress Haber or the Motion to Suppress Spear. The more than 2,900 pages of summary-judgment evidence include: (1) deposition testimony of Frank Burford, (2) deposition testimony of Dr. Dominic deKeratry, (3) Carolyn Burford's death certificate, (4) deposition testimony of Dr. Haber, (5) Dr. Haber's expert report, (6) an affidavit of Dr. Haber, (7) deposition testimony from Thomas Bonney, a former employee in Alcoa's industrial hygiene department, (8) various articles, publications, and reports of results regarding asbestos, (9) an affidavit of Spear, (10) Spear's April 8, 2022 expert report as well as prior expert reports from Spear, (11) Frank's medical records from Alcoa, (12) an affidavit of William E. Longo, (13) deposition testimony of Colon Sutton, and (14) deposition testimony of Edward Wilhite.

As to Carolyn's exposure to asbestos fibers from the Rockdale Plant on Frank's work clothes, the record contains lengthy and detailed testimony from Frank as to various ways in which his work clothes were exposed to dust containing asbestos fibers while Frank was working at the Rockdale Plant from 1963 through 1993. Frank described how his work clothes were dirty when he returned home from work and how Carolyn washed his work clothes every day that he worked for the first 25 years that he worked at Alcoa. According to Frank, Carolyn would wash his work clothes separately, make sure there was nothing in the pockets of the clothes, shake them out to remove the loose dust, and sometime smell the dirty work clothes. Dr. deKeratry testified that Carolyn told him (1)

Frank had worked with asbestos at the Rockdale Plant; (2) Carolyn had washed his work clothes that had asbestos dust on them; and (3) Carolyn used to try to get some of the dust off of Frank's work clothes before putting them in the washing machine. Considering all the summary-judgment evidence in the light most favorable to the Burford Parties, crediting evidence favorable to them if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, the summary-judgment evidence would allow reasonable and fair-minded jurors to find that Carolyn was exposed to and inhaled asbestos fibers that came from Alcoa's Rockdale Plant. Thus, the summary-judgment evidence raises a genuine fact issue as to whether Carolyn was exposed to and inhaled asbestos fibers that came from Alcoa's Rockdale Plant. *See Tipte Industries, Inc.*, 286 S.W.3d at 310; *Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755.

Dr. deKeratry took an exposure history from Carolyn, during which she explained how her husband had worked with asbestos at the Rockdale Plant and how she had washed his work clothes that had asbestos dust on them. Dr. deKeratry considered Carolyn's exposure to asbestos to be a substantial exposure. After considering her medical history, exposure history, and conducting several diagnostic tests, including a pulmonary function test, in 2006 Dr. deKeratry diagnosed Carolyn as suffering from asbestosis.[7] Dr. deKeratry testified that within a reasonable degree of medical probability, (1) he believed that the exposure related to him by Carolyn to asbestos was substantial enough or sufficient enough

---

[7] The record does not reflect that Alcoa has challenged, either in the trial court or on appeal, the reliability of Dr. deKeratry's testimony. Thus Alcoa has waived any reliability challenge that would require this court to evaluate Dr. deKeratry's underlying methodology, technique, or foundational data. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 231–33 (Tex. 2004).

to cause asbestosis; (2) in his opinion more likely than not Carolyn's exposure to asbestos while laundering Frank's work clothes was a substantial contributing factor in Carolyn's development of asbestosis and her death; and (3) asbestosis with progressive respiratory failure caused Carolyn's death. Dr. deKeratry signed Carolyn's death certificate, which lists the immediate cause of death as "hypoxic respiratory failure" due to or as a consequence of asbestosis. Considering all the summary-judgment evidence in the light most favorable to the Burford Parties, crediting evidence favorable to them if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, the summary-judgment evidence would allow reasonable and fair-minded jurors to find that Carolyn suffered from asbestosis. Thus, the summary-judgment evidence raises a genuine fact issue as to whether Carolyn suffered from asbestosis.[8] *See Tipte Industries, Inc.*, 286 S.W.3d at 310; *Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755; *Elliott v. Methodist Hosp.*, 54 S.W.3d 789, 796 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

---

[8] In its appellate brief Alcoa states that it disputes the asbestosis diagnosis, and Alcoa devotes five paragraphs, with accompanying cites to medical articles, explaining why Alcoa thinks that Carolyn probably suffered from "idiopathic pulmonary fibrosis" rather than asbestosis, and lamenting the absence of lung tissue samples. Though the articles Alcoa cites may be in the summary-judgment evidence, Alcoa provides no record citations or record evidence on the diagnosis issue. The opinions of Alcoa's counsel as to the diagnosis of asbestosis are not relevant to this appeal, and Alcoa cites no evidence from a medical professional. In any event, the issue is whether the summary-judgment evidence raises a genuine fact issue as to whether Carolyn suffered from asbestosis. There was evidence that tissue samples are not required to diagnose a person with asbestosis, and the points raised by Alcoa may be presented to a jury through cross-examination or through a medical expert retained by Alcoa. The points that Alcoa raises do not show that the summary-judgment evidence failed to raise a genuine fact issue as to whether Carolyn suffered from asbestosis.

Dr. Haber testified in his affidavit that "[a]sbestosis is the interstitial pneumonitis and pulmonary fibrosis caused by inhalation of asbestos fibers." When asked what causes asbestosis, Dr. deKeratry answered, "[a]sbestos inhalation, asbestos fiber inhalation." In an article contained in the summary-judgment evidence, the authors state that "*[a]sbestosis* is defined as diffuse pulmonary fibrosis caused by inhalation of excessive amounts of asbestos fibers." Thus, by definition, asbestosis is always caused by the inhalation of asbestos.[9] Dr. Haber testified that, "[u]nlike some diseases, such, as lung cancer, that may have more than one cause, the sole cause of asbestosis is asbestos. There is no disagreement of this fact in the medical and scientific community." Alcoa does not assert that something other than inhalation of asbestos can cause asbestosis. The summary-judgment evidence (1) contains reliable expert testimony that Carolyn's exposure to asbestos is the only possible cause of her asbestosis and (2) raises a genuine fact issue as to whether Carolyn's exposure to asbestos is the only possible cause of her asbestosis. *See Tipte Industries, Inc.*, 286 S.W.3d at 310; *Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755.

As discussed in section II.A. above, the summary-judgment evidence (1) contains reliable expert testimony that Alcoa was the source of all the asbestos to which Carolyn was exposed and (2) raises a genuine fact issue as to whether Alcoa was the source of all the asbestos to which Carolyn was exposed. *See Helena Chem. Co.*, 664 S.W.3d at 80; *Bostic*, 439 S.W.3d at 350; *Tipte Industries, Inc.*, 286 S.W.3d at 310; *Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755; *Havner*, 953 S.W.2d at 720.

---

[9] This is not the case with mesothelioma. The summary-judgment evidence shows that asbestos exposure is not the only cause of mesothelioma.

The summary-judgment evidence raises a genuine fact issue as to whether (1) Carolyn was exposed to and inhaled asbestos that came from Alcoa; (2) Carolyn's exposure to asbestos is the only possible cause of her asbestosis; and (3) Alcoa was the source of all the asbestos to which Carolyn was exposed. The Burford Parties presented reliable expert testimony that Carolyn's exposure to asbestos is the only possible cause of asbestosis. Thus, we conclude that through "direct, scientifically reliable proof of causation," the summary-judgment evidence raises a genuine fact issue as to whether asbestos from Alcoa was a substantial factor in causing Carolyn's asbestosis and death.[10] *See Bostic*, 439 S.W.3d at 352; *Havner*, 953 S.W.2d at 715.

**D.    Did the trial court abuse its discretion by denying the Motion to Exclude Haber and the Motion to Exclude Spear?**

On appeal, under its conditional cross-issue, Alcoa asserts that the trial court abused its discretion in denying the Motion to Suppress Haber because (1) Dr. Haber did not provide reliable scientific evidence establishing the threshold dose of asbestos necessary to attribute asbestosis to asbestos exposure; (2) when asked, Haber was "unable to identify a published work showing a 2.0 or greater RR at a 95% confidence interval for asbestosis below 25 [fiber/cc years]"; (3) Haber relied on Spear's initial lifetime dose estimate of 27.1 fiber/cc years, but Spear has issued two amended reports, with the most recent report positing a cumulative lifetime

---

[10] In the alternative, even if proof of the following elements were required to raise a genuine fact issue as to substantial-factor causation, we would conclude that the summary-judgment evidence contains proof of each element and raises a fact issue as to each of these points: (1) proof satisfying the frequency, regularity, and proximity test by showing Carolyn's exposure to asbestos over an extended period of time in proximity to where Carolyn worked in the home; (2) proof relating to the approximate dose of asbestos from Alcoa to which Carolyn was exposed; and (3) proof that this dose sufficiently contributed to the aggregate dose of asbestos inhaled by Carolyn, such that this dose may be considered a substantial factor in causing Carolyn's asbestosis.

asbestos dose of 11.1 fiber/cc years for Carolyn; and (4) the studies on which Dr. Haber relies to support his opinion that asbestosis may develop at an asbestos exposure as low as 5 fiber/cc years do not comply with the requirements of *Havner*. Because none of Alcoa's challenges to Dr. Haber's testimony address the testimony of Dr. Haber relied upon in section II.A. or II.C. above, none of these challenges, even if successful, would provide a basis for affirming the trial court's judgment. Thus, we overrule Alcoa's conditional cross-issue as to the Motion to Suppress Haber.

On appeal, under its conditional cross-issue, Alcoa asserts that the trial court abused its discretion in denying the Motion to Suppress Spear based on various arguments. After reviewing these arguments, we conclude that none of them challenges the testimony of Spear relied upon in section II.A. or II.C. above. Therefore, none of these challenges, even if successful, would provide a basis for affirming the trial court's judgment. Thus, we overrule Alcoa's conditional cross-issue as to the Motion to Suppress Spear.[11]

### III. CONCLUSION

The summary-judgment evidence raises a genuine fact issue as to whether (1) Carolyn was exposed to and inhaled asbestos that came from Alcoa; (2) Carolyn's exposure to asbestos is the only possible cause of her asbestosis; and (3)

---

[11] In the alternative, even if proof of the following elements were required to raise a genuine fact issue as to substantial-factor causation, we would conclude that the trial court did not abuse its discretion in denying the Motion to Suppress Haber or in denying the Motion to Suppress Spear: (1) proof satisfying the frequency, regularity, and proximity test by showing Carolyn's exposure to asbestos over an extended period of time in proximity to where Carolyn worked in the home; (2) proof relating to the approximate dose of asbestos from Alcoa to which Carolyn was exposed; and (3) proof that this dose sufficiently contributed to the aggregate dose of asbestos inhaled by Carolyn, such that this dose may be considered a substantial factor in causing the plaintiff's asbestosis.

Alcoa was the source of all the asbestos to which Carolyn was exposed. The Burford Parties presented reliable expert testimony that Carolyn's exposure to asbestos is the only possible cause of her asbestosis. Thus, we conclude that through direct, scientifically reliable proof of causation, the summary-judgment evidence raises a genuine fact issue as to whether asbestos from Alcoa was a substantial factor in causing Carolyn's asbestosis and death. To the extent the Burford Parties assert in their sole issue that the trial court erred in granting the No Evidence Motion because the Burford Parties provided the trial court with more than a scintilla of evidence constituting direct, scientifically reliable proof of causation, we sustain their issue. We overrule the remainder of the Burford Parties' issue, and we need not and do not address the Burford Parties' other arguments as to why the trial court erred in granting the No Evidence Motion.

Because none of the challenges to the testimony of Dr. Haber or Spear advanced under Alcoa's conditional cross-issue address the testimony of Dr. Haber or Spear relied upon in section II.A. or II.C. above, none of these challenges, if successful, would provide a basis for affirming the trial court's judgment. Therefore, we overrule Alcoa's conditional cross-issue. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

/s/     Randy Wilson
        Justice

Panel consists of Justices Wise, Zimmerer, and Wilson.